UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 13

JOHN R. CLANCY                           :

                    Debtor               :    Bankruptcy No. 05-12805F

---

JOHN R. CLANCY                           :
WILLIAM MILLER[1]

              Plaintiffs                 :

      v.                                 :

E*TRADE CONSUMER FINANCE
CORPORATION                              :

              Defendant                  :    Adversary No. 05-0201

---

..............................................

MEMORANDUM

..............................................

        John Clancy, the chapter 13 debtor, has filed a complaint against defendant

E*TRADE Consumer Finance Corporation.  The genesis of the complaint stems from the

defendant's prepetition repossession of a powerboat, known as the "Tool Box," belonging

to the debtor.

        The debtor alleges in count I of his complaint that the defendant is obligated

to return the vessel to him upon his demonstrating that the defendant's security interest is

---

[1]Plaintiff's counsel has an unfortunate habit of improperly naming bankruptcy
trustees as plaintiffs without their consent. Not only did Mr. Miller, the chapter 13 trustee, not
consent to being named as a plaintiff in this proceeding, he opposed the relief sought by the
debtor at the conclusion of the preliminary hearing.  Thus, I do not view the trustee as a party
plaintiff in this lawsuit.  See In re Knapper, 407 F.3d 573, 583 (3d Cir. 2005); see generally Gatto
v. MacMillan, 1996 WL 648859 (E.D. Pa. 1996).

adequately protected. In count II of his complaint, the debtor asserts that the defendant's

failure to return the boat constitutes a willful violation of the bankruptcy stay, thereby

entitling the debtor to compensatory and punitive damages. And in count III of the

complaint, he contends that the defendant's continuing possession of the vessel, in

violation of the bankruptcy stay, constitutes an infringement of Pennsylvania's Fair Credit

Extension Uniformity Act, 73 P.S. §§ 2270.1, et seq., for which compensatory, punitive

and statutory damages are demanded.

Presently before me is the debtor's motion for a preliminary injunction as to

count I only. The debtor seeks the immediate turnover of the repossessed vessel "upon

his providing proof of adequate insurance on the Boat," and upon his offer "to provide

adequate protection to the Defendant in the form of an agreement to pay all arrears and

several additional payments in a lump sum. . . ." Motion, "Wherefore" Clause. The

defendant opposes relinquishing possession of the vessel to the debtor, and its opposition

is supported by the chapter 13 trustee.

An evidentiary hearing was held upon the debtor's preliminary motion and

the following material facts were demonstrated.

I.

On or about May 10, 2001, the debtor became the owner of a 2001 34-foot

Luhrs Convertible powerboat called the "Tool Box." In connection with his ownership of

this vessel, the debtor granted a first preferred ship mortgage to Ganis Credit Corporation

in the amount of $139,700. Ex. M-1. E*TRADE is the successor in interest to Ganis.

2

The debtor testified that this mortgage was to be repaid in 240 monthly installments of $1,178.[2]

The debtor is self-employed and operates the John Clancy Construction Company. The Tool Box is used by him for recreational purposes only. Although title to the vessel is only in the debtor's name, Mr. Alan Mancill also uses the powerboat and has assisted in its maintenance and with payment of certain expenses.

Around October 2004, the debtor became delinquent in loan payments to E*TRADE, and the latter sent him a delinquency notice in January 2005. Prior to that time, the debtor had been late with monthly payments. Ex. M-2, ¶ 4. In addition, insurance on the vessel had lapsed and the debtor's marina storage fees were in arrears. Id., ¶ 6. The debtor sought to rectify his loan delinquency and sent a business check to E*TRADE dated January 30, 2005. Ex. D-1. For reasons not explained, this check was not negotiated and the vessel was repossessed on or about February 15, 2005.

At the time of its repossession, the vessel was located at a marina in Maryland.[3] E*TRADE had the boat taken to Connecticut, where it is presently located.

The debtor and Mr. Mancill maintain that the boat was purchased at a price lower than its market value, because Mr. Mancill offset some of the purchase price with a warranty claim he had against the manufacturer involving another vessel. (The debtor

---

[2]The movant did not offer in evidence the underlying note, and the mortgage itself is silent as to the number and amount of monthly payments.

[3]The mortgage, at 2 ¶ 8, restricts the permissible location of the vessel, referring to a document called the "Borrower's Acceptance of Vessel." That document was not offered in evidence. However, the creditor did not complain that the vessel was improperly docked at the marina in Maryland, and the mortgage contains an acknowledgment signed by a notary public in the State of Maryland, thus suggesting that Maryland was an appropriate location for this vessel.

also paid $25,000 as a down-payment at the time of purchase.)  They contend that the

present value of the powerboat is $230,000.  See United States v. 68.94 Acres of Land,

918 F.2d 389, 397 (3d Cir. 1990) (owner of property is competent to testify as to its

value).  E*TRADE asserts that the vessel is worth approximately $140,000.  Ex. M-6.

E*TRADE further alleges that it is still owed about $154,500.  Ex. M-2, ¶ 9.

The debtor disputes that E*TRADE's valuation of the powerboat is

accurate, because the NADA appraisal guide—upon which the creditor relies

exclusively[4]—refers to a 310 HP gasoline engine.  The Tool Box has a more powerful

twin diesel engine, an engine that both Mr. Mancill and the debtor maintain adds

considerably to its value.  In corroboration thereof, the debtor offered in evidence

(without objection) copies of web pages from YachtWorld.com.  These pages list twin

diesel engine 34-foot Luhrs Convertible boats for sale.  The prices range from $199,900

for a model year 2000 vessel, to $229,000 for a model year 2002 vessel.  Ex. D-5.

Based upon the testimony offered and the documents presented, I conclude

that, for purposes of this motion for a preliminary injunction, the fair market value of the

vessel is approximately $220,000; or $75,500 more than E*TRADE is owed.

In this chapter 13 case, the debtor has proposed a reorganization plan under

which he will tender $750 per month to the trustee for three years, totaling $27,000.  Ex.

D-4.  He further proposes to tender all postpetition monthly loan payments due to

E*TRADE and to cure the pre-bankruptcy ship mortgage delinquency as a component of

---

[4]Although an owner of property is competent to testify as to its value, a court need
not accept that valuation over expert testimony offered by the opposing party.  See United States
v. 7.92 Acres of Land, 769 F.2d 4, 12 (1st Cir. 1985).  Here, the secured creditor offered no such
testimony.

his plan payments. The proposed plan expressly provides that allowed claims of

unsecured creditors will be paid in full. Ex. D-4.

Finally, the debtor offered evidence of a temporary insurance binder for the

vessel issued by Travelers Insurance Company, inter alia, in the amount of $235,000 for

"Hull Coverage" (with a $2,350 deductible) with E*TRADE as the loss payee. Ex. D-3.

The debtor testified that he paid the annual premium for this insurance coverage, and

offered a copy of the premium check in evidence. Ex. D-6. Thus, the vessel was likely

covered by insurance at the time of the hearing.


II.


Fed. R. Bankr. P. 7065 incorporates Fed. R. Civ. P. 65 (except that a debtor,

trustee or debtor in possession need not post security to obtain a restraining order or

preliminary injunction). Rule 65(a) authorizes the issuance of a preliminary injunction.

In this circuit, four general elements must be considered before a

preliminary injunction may be entered:

> When ruling on a motion for a preliminary injunction, the
> district court must consider four factors: the likelihood of
> success on the merits; the extent of irreparable injury from the
> conduct complained of; the extent of irreparable harm to the
> defendants if a preliminary injunction issues; and the public
> interest.

Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); accord Shire US Inc. v.

Barr Laboratories, Inc., 329 F.3d 348, 352 (3d Cir. 2003). Moreover, insofar as these

four elements are concerned, the first two are of paramount importance:

> In order to obtain a preliminary injunction, plaintiffs must
> show both (1) that they are likely to experience irreparable
> harm without an injunction and (2) that they are reasonably
> likely to succeed on the merits. A court may not grant this
> kind of injunctive relief without satisfying these requirements,
> regardless of what the equities seem to require.

Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000); accord Northampton

County Democratic Party v. Hanover Township, 2004 WL 887386, at *9 (E.D. Pa. 2004).

There are two different categories of preliminary injunctions. One type is

designed "to preserve the status quo until the rights of the parties can be fairly and fully

investigated and determined by strictly legal proofs and according to the principles of

equity." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980). The second category are

called "mandatory preliminary injunctions." These injunctions are not intended to

preserve the status quo; instead, they direct the defendant to undertake certain actions,

and may afford "the movant substantially all the relief he may recover at the conclusion

of a full trial on the merits." SCFC ILC, Inc. v. VISA USA, Inc., 936 F.2d 1096, 1099

(10th Cir. 1991).

"[W]hen the preliminary injunction is directed not merely at preserving the

status quo but, as in this case, at providing mandatory relief, the burden on the moving

party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980); see,

e.g., Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994); GTE Corp. v.

Williams, 731 F.2d 676, 679 (10th Cir. 1984) ("The burden on the party seeking a

preliminary injunction is especially heavy when the relief sought would in effect grant

plaintiff a substantial part of the relief it would obtain after a trial on the merits.").

In this adversary proceeding, because the debtor seeks the actual turnover of

his vessel by way of preliminary injunction, which is the relief sought in count I, he has

the considerable burden to establish the most important elements of irreparable harm and

likelihood of ultimate success on the merits after trial. Indeed, the irreparable harm

component, which is always difficult to establish, <u>see</u>, <u>e.g.</u>, <u>In re RBGSC Inv. Corp.</u>, 240

B.R. 536, 545 (Bankr. E.D. Pa. 1999), <u>aff'd</u>, 253 B.R. 369 (E.D. Pa. 2000), becomes even

more so.

 The defendant contends that the plaintiff has failed to establish "any

'irreparable harm' that will befall him if a preliminary injunction does not issue."

Defendant's Memorandum, at 3. I agree that the evidence does not support this required

element for preliminary relief.

 In <u>Tiffany v. Forbes Custom Boats, Inc.</u>, 959 F.2d 232 (Table), 1992 WL

67358 (4th Cir. 1992), the plaintiff sought a mandatory preliminary injunction by which a

53-foot fishing vessel would be turned over, pending a trial on the merits. In reversing

the trial court's grant of mandatory preliminary relief injunction, the Fourth Circuit Court

of Appeals addressed the issue of irreparable harm as follows:

> [The plaintiff] contends he is being "denied access to my boat
> to use it for personal pleasure and entertaining clients or
> friends." He further contends he is being denied the
> opportunity to secure owner's insurance, which would be
> lower than insurance while the vessel is being completed, or
> to inspect his "vessel for defects in the workmanship."
>
> Yet, it is plain that the plaintiff did not meet the prerequisite
> of "irreparable harm" as that term is used in this context. The
> vessel, according to the affidavit of Irma Forbes, is presently
> insured under a policy procured in an amount sufficient to
> satisfy the claims of the parties, if sustained. The claim of the
> plaintiff of use of the boat and opportunity to entertain on the
> vessel will not constitute the required "irreparable harm."

<u>Id.</u>, at *11 (footnote and citation omitted).

7

Similarly, in this instance, the debtor contends that his inability (and that of Mr. Mancill) to use the luxury powerboat for purely recreational purposes constitutes "irreparable harm." This argument, as just noted by the Fourth Circuit Court of Appeals, is unpersuasive. See also United States v. Any and All Assets of That Certain Business Known As Shane Co., 816 F. Supp. 389, 398 (M.D.N.C. 1991) ("When the seizure only involves an item of personal property such as a car, irreparable harm may be very difficult to demonstrate."); United States v. Mosquera, 695 F. Supp. 1353, 1357 (D. Mass. 1988) ("There is nothing in the record to indicate that the subject of the seizure, the 1984 Corvette Coupe, is in any way unique, the deprivation of which would cause the defendant irreparable injury. We cannot imagine, even if we were to reach beyond the pleadings, how any possibility existed for irreparable injury in this case, given the subject of the forfeiture.").

Accordingly, as the plaintiff has not demonstrated the irreparable harm

element required for a preliminary injunction, I need not consider the other three

elements,[5] and he is not entitled to the mandatory preliminary injunction.[6]

An appropriate order shall be entered.

---

[5]Although I need not address the defendant's contention that the plaintiff has not demonstrated a likelihood of success on the merits, I note that this argument relies, in part, upon recent proofs of claim filed by federal and state taxing authorities. Both the United States and the Commonwealth assert priority claims that aggregate in excess of $75,000. By virtue of section 1322(a)(2), a viable chapter 13 plan must provide for the full payment of all priority claims, unless the claimant agrees otherwise. See, e.g., Shabazz v. United States, 1997 WL 593863, at *2 (E.D. Va. 1997); In re Williamson, 296 B.R. 760, 764 (Bankr. N.D. Ill. 2003).

As the plaintiff's proposed plan clearly does not provide for these priority claims, if they are valid claims the plaintiff would be unable to reorganize absent the consent of the taxing authorities. It may be problematic for a chapter 13 debtor who is clearly unable to reorganize to demonstrate adequate protection of a secured claim for purposes of turnover relief, especially when the proposed plan is intended as a component of that adequate protection.

[6]Given the multiple counts to this complaint, including claims for compensatory and punitive damages, the parties have been afforded the opportunity for discovery via an earlier-issued pretrial order. At the final pretrial hearing now scheduled for October 7, 2005, this proceeding will be listed for trial on the merits, including the plaintiff's request for final injunctive relief.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 13

JOHN R. CLANCY                           :

               Debtor                    :    Bankruptcy No. 05-12805F

_____

JOHN R. CLANCY                           :
WILLIAM MILLER

               Plaintiffs                :

        v.                               :

E*TRADE CONSUMER FINANCE
CORPORATION                              :

               Defendant                 :    Adversary No. 05-0201

_____

..............................................

ORDER

..............................................

        AND NOW, this 29th day of June 2005, for the reasons stated in the

accompanying memorandum, plaintiff John R. Clancy's request for a preliminary

injunction on count I of his complaint is denied.

_____
BRUCE FOX
United States Bankruptcy Judge

10

copies to:

Michael B. McCauley, Esquire
Palmer Biezup & Henderson, LLP
956 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106

David A. Scholl, Esquire
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St. Albans Avenue
Newtown Square, PA 19073

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall
Suite 583
Philadelphia, PA 19106